WEAVER, J.
(concurring). I concur fully in and sign the lead opinion reversing the decision of the Workers’ *474 Compensation Appellate Commission (WCAC), remanding this case to the WCAC, and overruling the holding of Karaczewski v Farbman Stein & Co, 478 Mich 28; 732 NW2d 56 (2007), that gave the Karaczewski decision retroactive effect.
I write separately to correct the mistaken assertions in Justice Young’s dissent, which is signed by Justices CORRIGAN and Markman,[1] including the mistaken assertions of these “remaining three” regarding my position on stare decisis.
The dissent attempts to characterize the majority’s opinions and decision not to apply Karaczewski retroactively as a decision to effectively overrule Karaczewski. This characterization is not only incorrect and inaccurate, it is misleading and intellectually deceptive.
Further, the dissent’s attempt to characterize the lead opinion as being representative of a so-called new philosophical majority is also false. There is no philosophical majority in this case. While the justices forming the majority each agreed with the result in this case, each justice reached his or her conclusion based on different reasons.[2]
*475 It appears that the dissent is attempting to lump together the four justices who agree with parts of the lead opinion into having had some sort of previously stated fidelity to stare decisis that those justices have abandoned since former Chief Justice TAYLOR’s overwhelming defeat in the 2008 election.
The dissent quotes various past statements, made by those justices signing portions of the lead opinion, regarding stare decisis and criticizing the former “majority of four” (former Chief Justice TAYLOR and Justices CORRIGAN, YOUNG, and MARKMAN). With respect to myself, the dissent quotes a statement I made in response to the improper and unfair dismantling of decades of longstanding insurance contract law by the former “majority of four” in Devillers v Auto Club Ins Ass’n, 473 Mich 562; 702 NW2d 539 (2005). In Devillers, I stated, “Correction for correction’s sake does not make sense. The case has not been made why the Court should not adhere to the doctrine of stare decisis in this case.” Id. at 622 (WEAVER, J, dissenting) (emphasis added).
The dissent’s use of my Devillers statement appears to be a weak attempt to manufacture some sort of story to try to get people to believe that a philosophical majority of justices exists and is out to overrule precedent created by the “majority of four.” The dissent’s mistaken assertions that I have somehow changed my view of stare decisis since former Chief Justice TAYLOR was defeated and that I am part of a philosophical majority are simply incorrect.
My Devillers statement itself shows that I was criticizing the disregard for stare decisis in that specific *476 case. My Devillers statement is an example of my service to the rule of law and a partial expression of my view of the policy of stare decisis, which is that past precedent should generally be followed but that, in deciding whether wrongly decided precedent should be overruled, each case should be looked at individually on its facts and merits through the lens of judicial restraint, common sense, and fairness.[3]
Over the past decade, the principal tool used by this Court to decide when a precedent should be overruled is the set of guidelines that was laid out in Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000), an opinion written by former Justice TAYLOR that Justices *477 Corrigan, Young, Markman, and I signed, and that I have used numerous times. In the instant case, my lead opinion specifically, and properly, applies the Robinson guidelines. Thus, the dissent’s assertion that I have changed my view on stare decisis makes no logical sense.
Furthermore, I note that my position in Devillers is in no way inconsistent with my position on stare decisis in this case, nor is it inconsistent with any position on stare decisis that I have taken in other cases, such as Robinson. Devillers involved the “majority of four” overruling precedent involving contract interpretation from a case that was nearly twenty (20) years old. In my Devillers dissent, I noted that I agreed with the majority’s interpretation that the old precedent was incorrect, but given the passage of time since that specific precedent was decided, the Court should not disturb that longstanding precedent because the law had become so ingrained that to overrule it would harm the reliance interests of parties in insurance cases. My position in Devillers was entirely consistent with the reliance prong of the Robinson guidelines.[4]
My position in the instant case is also consistent with the reliance prong of the Robinson guidelines since Karaczewski, the case of which a portion is now being overruled, was only decided three (3) years ago. Furthermore, the portion that is being overruled is merely that decision’s retroactive effect — applying the new decision to parties’ past actions. My statement in Devillers is actually supportive of my position in the instant case because in both instances my position has been to apply the longstanding law that parties had relied on when their cases arose.
*478 The dissent cannot point to a statement where I professed some sort of position regarding stare decisis as an immutable doctrine, because I have not taken that position, and therefore have made no such statements. For instance, I specifically chose not to sign Chief Justice KELLY’s lead opinion in Petersen v Magna Corp, 484 Mich 300, 316-320; 773 NW2d 564 (2009), because it proposed to create a standardized test for stare decisis. There is no need for this Court to adopt any standardized test regarding stare decisis. In fact, it is an impossible task.
There are many factors to consider when deciding whether or not to overrule precedent, and the importance of such factors often changes on a case-by-case basis. The Robinson guidelines are relevant in cases such as the instant case, in which reliance interests are at risk. By no means do I consider the Robinson guidelines a “be-all, end-all test” that constitutes precedent of this Court to be used whenever this Court considers overruling precedent. I view Robinson as merely providing guidelines to assist this Court in its legal analysis when pertinent.
In the end, the consideration of stare decisis and whether to overrule wrongly decided precedent always includes service to the rule of law through an application and exercise of judicial restraint, common sense, and a sense of fairness — justice for all.

 Justices Corrigan, Young, and Markman comprise “the remaining three” justices of the former “majority of four,” which included former Chief Justice Taylor.

 The dissent attempts to make an argument that there is some sort of philosophical majority that wants to overrule Karaczewski in its entirety. However, one need look no further than the various opinions written in this case to see that there is no such majority for that proposition. When Karaczewski was decided in 2007, I concurred in the substance of the opinion, and' I continue to see nothing wrong with its statutory analysis. On the other hand, Chief Justice Kelly is dissenting in part from the lead opinion in this case for the very reason that she thinks Karaczewski needs to be completely overruled. Her position is understandable, given that she dissented from the entire decision in 2007 when Karaczewski was decided. But there are currently not four votes for her position, so her position is not the majority’s position. Rather, there are in essence six *475 justices who have for whatever reason decided not to join with the Chief Justice’s position to overrule all of Karaczewski in this case. The dissent simply ignores that fact for the convenience of making the mistaken conclusions in the dissenting opinion seem more palatable.

 I agree with the sentiment recently expressed by Chief Justice Roberts of the United States Supreme Court in his concurrence to the decision in Citizens United v Federal Election Comm, 558 US _, _; 130 S Ct 876, 920; 175 L Ed 2d 753, 806 (2010), when he said that
stare decisis is neither an “inexorable command,” Lawrence v. Texas, 539 U. S. 558, 577 [123 S Ct 2472; 156 L Ed 2d 508] (2003), nor “a mechanical formula of adherence to the latest decision,” Helvering v. Hallock, 309 U. S. 106, 119 [60 S Ct 444; 84 L Ed 604] (1940) .... If it were, segregation would be legal, minimum wage laws would be unconstitutional, and the Government could wiretap ordinary criminal suspects without first obtaining warrants. See Plessy v. Ferguson, 163 U. S. 537 [16 S Ct 1138; 41 L Ed 256] (1896), overruled by Brown v. Board of Education, 347 U. S. 483 [74 S Ct 686; 98 L Ed 873] (1954); Adkins v. Children’s Hospital of D. C., 261 U. S. 525 [43 S Ct 394; 67 L Ed 785] (1923), overruled by West Coast Hotel Co. v. Parrish, 300 U. S. 379 [57 S Ct 578; 81 L Ed 703] (1937); Olmstead v. United States, 277 U. S. 438 [48 S Ct 564; 72 L Ed 944] (1928), overruled by Katz v. United States, 389 U. S. 347 [88 S Ct 507; 19 L Ed 2d 576] (1967).
Chief Justice Roberts further called stare decisis a “principle of policy” and said that it “is not an end in itself.” Id. at _; 130 S Ct at 920; 175 L Ed 2d at 807. He explained that “[i]ts greatest purpose is to serve a constitutional ideal — the rule of law. It follows that in the unusual circumstance when fidelity to any particular precedent does more to damage this constitutional ideal than to advance it, we must be more willing to depart from that precedent.” Id. at _; 130 S Ct at 921; 175 L Ed 2d at 807.

 For an explanation of the various prongs of the Robinson guidelines, see the lead opinion, ante at 466.