# STATE OF MICHIGAN

# COURT OF APPEALS

---

JENNA S. AFHOLTER also known as JENNA S.
AFFHOLTER,

        Plaintiff-Appellant,

v

PHILLIP C. MATUK,

        Defendant-Appellee.

UNPUBLISHED
March 8, 2018

No. 336059
Kent Circuit Court
LC No. 16-002551-NO

---

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

M. J. KELLY, J. (*dissenting*).

Because I believe factual questions prevent the granting of summary disposition under MCR 2.116(C)(10), I respectfully dissent.

It is worth reciting the standard imposed upon a court deciding a summary disposition motion under MCR 2.116(C)(10). A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). It is to be reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is proper if there is "no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt*, 481 Mich 419, 425; 751 NW2d 8 (2008). Moreover, when interpreting MCL 554.139, the statute at issue in this case, this Court must be mindful that the statute is to "be liberally construed." MCL 554.139(3).

The majority properly notes that, under *Allison*, a landlord may be liable pursuant to MCL 554.139(1)(a) for failing to maintain the common areas of its property so that they are "fit for the use intended." *Allison*, 481 Mich at 423. I agree with the parties, the lower court, and the majority that the sidewalk at issue is a common area. See *id* at 427-428.

It is the majority's treatment of *Hadden v McDermitt Apts, LLC*, 287 Mich App 124; 782 NW2d 800 (2012) that I find problematic. The majority quotes *Hadden* for the proposition that when compared to "one to two inches of snow" in a parking lot, i.e., the factual circumstances in *Allison*, the "black ice" on a stairway in *Hadden* presented more than a "[m]ere inconvenience."

-1-

The majority then posits that, just like the one to two inches of snow in *Allison*, the ice patch in this case only presents a "mere inconvenience." In my view, the majority fails to appreciate the distinction the *Hadden* Court made between the primary purpose of a parking lot and the primary purpose of a stairway. In *Hadden*, this Court reasoned:

> This case is factually distinguishable from *Allison* because black ice on a stairway presents more than the "[m]ere inconvenience posed by "one of two inches of snow" in a parking lot. See *Allison*, 481 Mich at 423. Furthermore, as the Court stated in *Allison*, the primary use of a parking lot is to park cars. *Id*. at 429. Although the Court recognized that tenants must have reasonable access to their vehicles in a parking lot, i.e., they must be able to walk to the vehicles, *id*., tenants do not use a parking lot for its intended use by merely walking in the lot. Walking in a parking lot is secondary to the parking lot's primary use. In contrast, a tenant uses a stairway for its intended use solely by walking up and down it. Thus, the primary purpose of a stairway is for walking. Indeed, the primary purpose and, therefore, intended uses of a parking lot and a stairway are two different things. [*Hadden*, 287 Mich App at 132 (alteration in original).]

Like the stairway in *Hadden*, the primary purpose and intended use of the sidewalk in this case is for walking from the apartment complex to another sidewalk. Thus, the undisputed presence of ice and snow on the sidewalk in this case is necessarily different than the accumulation of snow in a parking lot insofar as the accumulation of ice and snow affects the primary purpose of a sidewalk differently than it affects the primary purpose of a parking lot.[1] Here, just as in *Hadden*, under all the circumstances presented, the snow- and ice-covered sidewalk may not have been fit for its intended use at the time plaintiff fell.

The majority distinguishes the ice in this case from the ice in *Hadden* by noting that *Hadden* involved "black ice" whereas the ice in this case was visible and avoidable. However, its review of the evidence has the whiff of a premises liability "open-and-obvious" analysis. This is a mistake. It is well established that the open and obvious doctrine does not apply to a claim alleging a statutory violation. *Walker v City of Flint*, 213 Mich App 18, 21-22; 539 NW2d 535 (1995). There is a long, well-known, and often curious body of law addressing this doctrine in Michigan jurisprudence. In short, a premises owner owes no duty to protect or warn against open and obvious hazards. *Lugo v Ameritech Corp*, 464 Mich 512, 516-519; 629 NW2d 384 (2001). "[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Id*. at 516 (quotation marks and citation omitted). A dangerous condition is open and obvious when the hazard is such that an average person of ordinary intelligence would have discovered it upon casual inspection. *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002).

---

[1] Anyone living in Michigan for any period of time is cognizant that it takes more than a few inches of snow to disrupt the ability to safely park a vehicle in a parking lot than it does to render a sidewalk hazardous for walking.

We are not addressing the issue of duty in this case. The duty here is set forth by the statute, MCL 554.139(1)(a), and the only question is whether the statute was breached. Therefore, while perhaps significant for a comparative negligence analysis, the fact that "patches of ice are commonly found on walkways throughout Michigan in the winter," that the ice was "easy to see and plainly visible," or that "plaintiff had no other complaints or problems with the walkway," is simply irrelevant in determining whether MCL 554.139(1)(a) was violated.

It is indisputable that there was a patch of ice close to 12 inches that plaintiff slipped and fell on. The record contains evidence that in addition to the patch of ice, the sidewalk was completely covered in hard-packed snow such that the concrete was not visible. In addition, weather reports submitted as part of the lower court record indicate that there had been no recent snowfalls. Indeed, warming temperatures during the preceding days appear to have been enough to melt snow in the area from a depth of eight inches to one inches, while the nighttime temperatures fell below the freezing point. In reviewing this evidence in a light most favorable to the non-moving party, I believe that reasonable minds can differ as to whether this evidence creates a breach of the statute. Therefore a jury should determine whether this was a violation of the landlord's statutory duty to keep this common area walkway "fit for the use intended." It is not for us to determine, as matter of law, that this was or was not "an ideal condition" or a "mere inconvenience." Those are inherently factual questions, especially given that the primary purpose of the sidewalk is for walking.

/s/ Michael J. Kelly